2006 OK 72

## John SHORTER, Petitioner,

v.

## TULSA USED EQUIPMENT AND INDUSTRIAL ENGINE SERVICES, National American Insurance Company and the Workers' Compensation Court, Respondents.

### No. 102,280.

Supreme Court of Oklahoma.

Oct. 10, 2006.

Rehearing Denied Dec. 4, 2006.

M. Scott Ash, Tulsa, OK, for Petitioner.

W. Jeffrey Dasovich, Oklahoma City, for Respondents.[3]

OPALA, J.

¶ 1 The question presented on certiorari is whether COCA erred when it sustained the three-judge panel's order that ruled the terms of 85 O.S.2001 § 65.2[4] (the estoppel act) may not be invoked by claimant in today's cause. We answer in the affirmative.

## I.

### ANATOMY OF THE LITIGATION

¶ 2 John Shorter (Shorter or claimant) is sole shareholder of Tulsa Used Equipment and Industrial Engine Services (Tulsa Used Equipment), a Subchapter S corporation engaged in heavy equipment sales and service. National American Insurance Company (NAIC) is Tulsa Used Equipment's workers' compensation insurance provider (these two entities together with the Workers' Compensation Court (WCC) are collectively called respondents). Tulsa Used Equipment's compensation policy contains a "partners, officers and others exclusion endorsement" which excludes from compensation coverage those whose names are listed on the form. Shorter's name is listed on this endorsement.

¶ 3 Shorter filed a compensation claim alleging he sustained a work-related injury to his hands on 28 July 2003. NAIC initially provided 52 weeks of benefits to claimant but later denied its liability for the injury. At a hearing before the WCC, Shorter urged respondents were estopped to deny liability by the provisions of 85 O.S.2001 §§ 65.2 and 65.3 (the estoppel act)[5]. **This is so because, despite Shorter's name appearance on the exclusion endorsement, his salary was in fact included in the calculation of the workers' compensation insurance premiums to be paid by Tulsa Used Equipment.**

¶ 4 Respondents urged that the estoppel act may not be invoked because NAIC did not accept an insurance premium that included Shorter's wages in the calculation; rather, it accepted only a deposit. This is so because Shorter's wages, which were included in determining the premium at the beginning of the policy's term, were deducted from the computations in the annual end-of-policy audit and refunded to Tulsa Used Equipment.[6] In their post-trial briefs respondents

**3.** Identified herein are only those counsel for the parties whose names appear on the certiorari briefs.

**4.** For the terms of § 65.2 see *supra* note 1.

**5.** For the terms of §§ 65.2 and 65.3 see *supra* note 1.

**6.** The policy was issued for a term of one year (2 July 2003 to 2 July 2004) and was in effect at the

challenged the WCC's jurisdiction over the cause [7] and urged Shorter is not one who may invoke estoppel's protection because 1) he excluded himself from coverage and there is no employer-employee relationship between him and the insured and 2) Shorter's actions prevent application of estoppel here.[8]

¶5 The trial judge ruled that: 1) the court has jurisdiction and 2) Shorter is within the compensation policy's coverage by the estoppel act. This is so because, according to the judge, NAIC breached the terms of its exclusion endorsement.[9] A three-judge panel vacated the trial judge's order. It held that under the Workers' Compensation Act (Act)[10] Shorter was neither an employer nor an employee. The express text of § 65.2[11]—referencing the "scheduling of any employee ..."—was inapplicable. COCA sustained the panel's ruling.[12] Claimant seeks certiorari review.

## II.

## STANDARD OF REVIEW

¶6 The issue presented calls for resolution of a question of law. Review of contested law is governed by a *de novo* standard.[13] In its re-examination of the trial tribunal's legal rulings an appellate court

---

7. time of claimant's injury. Testimony reveals the end-of-year policy audit most likely occurred after claimant's alleged on-the-job injury. (transcript at p. 45) An identical policy was in effect the previous year.

Respondents, in their post-trial brief, assert the contract for insurance was executory. The condition precedent was for the insurer to estimate wages and receive a deposit. The condition subsequent was to audit the payroll and determine the actual premium due. According to respondents, only after the insurer made a refund was the contract complete and the premium considered actually paid. No controlling authority is cited for the claim that this contract provision may protect the insurer from the operation of the estoppel statute.

7. Respondents challenge the trial tribunal's jurisdiction and contend that it is without power to reform the contract. While the WCC has authority to interpret and construe insurance policies, it, unlike courts of general jurisdiction, is without authority to decide general contract matters and reform an insurance policy. (*Hefley v. Neely Ins. Agency, Inc.,* 1998 OK 12, ¶10, 954 P.2d 135, 137–38) Although this proposition is correct, today's pronouncement does not require that we address this issue.

8. Respondents urge the claim of estoppel was not available to Shorter. This is so because he waived his right to be covered by the policy and because he accepted the refund. One may not waive a right provided under contract and then claim an estoppel within that transaction at a later date. (*Indian Territory Operating v. Bridger,* 500 F.Supp. 449, 451 (W.D.Okla.1980)) One who relies on estoppel "must have exercised such reasonable diligence as circumstances require, and he cannot evoke estoppel if he conducted himself with careless indifference to means of information reasonably at hand or ignored highly suspicious circumstances which should have warned him of danger or loss." (*Jones Trucking Co. v. Cargill,* 1955 OK 93, 282 P.2d 753, 756;

see also *First State Bank v. Diamond Plastics,* 1995 OK 21, ¶29, 891 P.2d 1262, 1272; *Hillers v. Local Federal Savings and Loan Ass'n.,* 1951 OK 57, ¶14, 232 P.2d 626, 630) All of the causes cited by respondents dealt with common-law equitable estoppel or waiver. Although these legal doctrines are often used interchangeably, waiver requires an intentional relinquishment of a known right. The transcript does not reveal that this is so here. Today's cause deals with statutory estoppel, not those of common law and equity origin.

9. The trial tribunal, applying strict construction of insurance policies, ruled that where one provision of a contract appears to exclude coverage and another seems to include it the policy will be strictly construed against the insurer and in favor of coverage. It further found that NAIC's purpose of including the endorsement provision—"[t]he premium basis for the policy does not include the remuneration of [listed] persons"—was to avoid the effects of statutory estoppel. (miscellaneous order, record, p. 9)

10. The Workers' Compensation Act, 85 O.S.2001 § 1 et seq.

Claimant, owner of respondent employer, because of his election in accordance with § 8 was excluded from the definition of employer. (Three-judge panel order, p. 1) For the text of § 8 see *supra* note 2.

11. For the terms of § 65.2 see *supra* note 1.

12. COCA ruled Shorter was not an employee and, hence, not entitled to benefits, either under the terms of the policy or by estoppel.

13. *Arrow Tool & Gauge v. Mead,* 2000 OK 86, ¶6, 16 P.3d 1120, 1122–23; *Neil Acquisition L.L.C. v. Wingrod Investment Corp.,* 1996 OK 125, ¶5, 932 P.2d 1100, 1103; *Brown v. Nicholson,* 1997 OK 32, ¶5, 935 P.2d 319, 321.

exercises plenary, independent and nondeferential authority.[14]

## III.

### A.

### THE PARTIES' ARGUMENTS

¶ 7 Respondents urge COCA's analysis—Shorter, in essence, must first be found to be an employee in accordance with the Act before he may invoke the terms of § 65.2 [15]—is correct. Claimant, according to respondents, may not use the estoppel act as a means of "bootstrapping" jurisdiction. They urge an employer-employee relationship must first be established and the jurisdictional requirements met before the estoppel act is applicable.[16] Shorter, on the other hand, continues to assert that because his wages were used in calculating the compensation premium, he stands eligible to invoke the estoppel act's protection. Both parties' lower-court briefs

cite cases deemed to support their divergent view of the applicable law.

¶ 8 Respondents cite to the teachings of *Rosamond Construction Co. v. Rosamond.*[17] There a sole proprietor obtained worker's compensation insurance for his business, paid the premium (calculation of the premium included the owner's wage), and, later the same day, sustained an on-the-job injury. The court ruled the terms of the Act then in force anticipated that the parties be two separate individuals and unless there is an employer-employee relationship, no liability can arise under the Act.[18] Although claimant there sought the estoppel act's protections, the court maintained the enactment could not be invoked by the claimant unless an employer-employee relationship is first established.[19]

■ ¶ 9 Claimant, in his lower-court materials, cites *Young v. the City of Holdenville*[20] and the court's decision in a series of Indian sovereignty cases.[21] *Young* teaches that an

---

**14.** *Arrow Tool, supra* note 13, at ¶ 6 at 1122–23; *Neil Acquisition, supra* note 13, at ¶ 5 at 1103; *Kluver v. Weatherford Hosp. Auth.,* 1993 OK 85, ¶ 14, 859 P.2d 1081, 1084.

**15.** For the terms of § 65.2 see *supra* note 1.

**16.** COCA did not address respondents' other lower-court arguments.

Respondents urge that estoppel is an ancillary issue and because Shorter did not contest the denial of his status as an "employee," he concedes that the court cannot award benefits regardless of other factors. Today's pronouncement deals with the application of the estoppel act and its impact upon the court's jurisdiction. Neither is an ancillary issue. Claimant did not concede to respondents' interpretation of his status as an employee.

**17.** *Rosamond Construction Co. v. Rosamond,* 1956 OK 13, ¶ 14, 292 P.2d 392, 395.

Respondents also cite to *Mills v. R.T. "Bob" Nelson's Painting Service,* 1966 OK 262, ¶ 9, 421 P.2d 849, 851. The court there found the claimant was an independent contractor and not an employee. He, hence, was not entitled to compensation benefits. There the claimant unsuccessfully sought to invoke the estoppel provisions. The court ruled the estoppel act goes only to the question of hazardousness, and the nature of claimant's work was clearly hazardous and not in dispute. (citing *Folsom Auto Supply v. Bristow,* 1954 OK 254, ¶ 16, 275 P.2d 706, 711) We note that although the body of the opinion

does not address whether the claimant's wages were considered in setting compensation premiums, the court's syllabus provides "[t]he effect of the 'Estoppel Act, ... is to prohibit interposition by an employer of the defense that the employment of a claimant was nonhazardous if the remuneration paid claimant is scheduled, considered or used in determining the amount of premium paid for workmen's compensation insurance." *supra.*

**18.** *Rosamond, supra* note 17, at ¶ 10 at 395.

**19.** *Rosamond, supra* note 17, at ¶ 10 at 395.

**20.** *Young v. City of Holdenville,* 1963 OK 154, ¶ 17, 384 P.2d 905, 906.

**21.** *Dominic v. Creek Nation,* 1997 OK 41, 936 P.2d 935; *Wahpepah v. Kickapoo Tribe of Oklahoma,* 1997 OK 63, 939 P.2d 1151; *Muscogee Nation v. Smith,* 1997 OK 66, 940 P.2d 498; *Little v. Muscogee (Creek) Nation,* 1997 OK 57, 938 P.2d 739. In each of these cases the sovereign Indian nation purchased insurance policies from the State Insurance Fund and paid premiums based on its employees' salaries. Each policy was issued to cover claims filed in accordance with the Act. The court held the insurer was statutorily estopped to deny coverage based on the tribe/nation's sovereign immunity in accordance with the terms of §§ 65.2 and 65.3 because the insurer collected premiums on covered employees.

insurance company is estopped to deny that an elected city official is an employee when the official's wages were used in calculating compensation premiums and the claimant's relationship with the city is in the nature of employer and employee. The court in *Young* plainly instructs that the enactment of the estoppel provisions disposes of the contention that the relation of master and servant or employer and employee must be shown to exist as a prerequisite to recovery in those causes where the estoppel act is invoked.[22] *Young* further distinguished *Rosamond* by noting that there was no representation of an employer-employee relationship in favor of which an estoppel could be asserted.[23] *Dominic*[24] and its progeny (the Indian sovereignty causes) dealt with the WCC's jurisdiction where an employer's status as a covered entity under the Act was challenged.[25] These cases teach **that a compensation insurer who collects insurance premiums that are based on claimant's monetary compensation is estopped to deny insured's status as a covered employer.**[26] In these latter cases the court held that once the existence of a workers' compensation insurance policy that covers the claimant is established, jurisdictional requirements for proceeding before the trial tribunal are deemed met.

**B.**

### *DOMINIC* CONCRETIZED THE APPLICATION AND OUTER REACHES OF THE ESTOPPEL ACT, 85 O.S.2001 §§ 65.2 and 65.3, TO PROVIDE COMPENSATION PROTECTION FOR ALL CLAIMANTS WHO AT THE TIME OF INJURY WERE ACTING FOR THE INSURED AND UPON WHOSE EARNINGS THE INSURER COLLECTED PREMIUMS

¶ 10 Claimant's status is of no consequence in determining here whether the estoppel act may be invoked. The sole legal question presented is whether the insurance carrier is statutorily estopped from denying workers' compensation coverage. When denying an award to this claimant, the three-judge panel clearly relied on, and gave paramount importance to, Shorter's express exclusion from the compensation protection to be provided by the carrier. This analysis was clearly in error. The terms of §§ 65.2 and 65.3 are utterly devoid of requirements that either contractual or consensual elements of claimant's relationship to the insured be established.[27] The focus is, rather, on the rights of an injured claimant against the insurance carrier of the entity for whom claimant was acting when injured. These rights are purely statutory.[28]

¶ 11 Respondents' interpretation of and reliance on the court's pre-*Dominic* jurisprudence (dealing with the estoppel act) is in error. Indeed, a review of this body of law reveals the cacophony of voices entangling application of the estoppel provisions.[29] The

---

22. *Young, supra* note 20, at ¶ 10 at 906; see also *Atlas Rock Bit Service Co. v. Henshaw*, 1979 OK 20, ¶ 8, 591 P.2d 294, 294.

23. *Young, supra* note 20, at ¶ 12 at 906.

24. *Dominic, supra* note 21.

25. Respondents contend the Indian sovereignty cases are not applicable because they challenge an employer's, not an employee's status, under the Act.

26. *Dominic, supra* note 21, at ¶ 14 at 939; *Wahpepah, supra* note 21, at ¶ 13 at 1154–55; *Muscogee Nation, supra* note 21, at ¶ 8 at 501; *Little, supra* note 21, at ¶ 16 at 744.

27. *Dominic, supra* note 21, at ¶ 8 at 938; *Little, supra* note 21, at ¶ 10 at 742 (citing *State Insurance Fund v. Brooks*, 1988 OK 50, ¶ 7, 755 P.2d 653, 656).

28. This analysis is the same as that which the court applied in the Indian sovereignty cases *supra* note 21.

29. Discord exists in the court's pre-*Dominic* jurisprudence. For support of claimant's proposition—that a claimant whose wages were considered in calculating compensation insurance premiums may invoke the estoppel act—see *Barney U. Brown & Sons, Inc., et al. v. Savage*, 1953 OK 131, ¶ 6, 258 P.2d 183, 185 (where a salesman of employer's feed and grain company whose wages were mistakenly listed in the calculation of the compensation premium for employer's oil and gas sales business was held to be covered and the insurer was estopped to deny liability in accordance with the terms of §§ 65.2 and 65.3); *Jot Davis Welding Service v. Davis*, 1962 OK 243, ¶ 8, 376 P.2d 259, 260–61 (an insurer was estopped to deny liability for an employee's on-the-job injury where employer had but one employee); *Young, supra* note 20,

discord stands clearly resolved by *Dominic*[30] and its progeny.

¶ 12 An insured's compensation policy is treated as a guarantee that its workers are protected by the Act.[31] *Once the existence of workers' compensation insurance covering claimant is established, jurisdictional requirements for proceeding in the compensation court are deemed met.*[32] The tribunal then acquires power to entertain the claim. Although the Indian sovereignty causes used terms that addressed themselves to an employer's status under the Act, *Dominic concretizes* [33] *the doctrine of estoppel by imposing on a claimant who invokes the doctrine the duty to prove but three elements: 1) the claimed injury occurred during the time the premium-paying insured maintained a compensation liability policy 2) claimant's earnings were used in the calculation of the premium that was* *paid by the insured and 3) claimant's injury occurred while he was acting for the insured.*[34] Once this proof is met, coverage is effected under the estoppel act through the law's conclusive presumption in claimant's favor. The presumption is created by premiums on the policy having been collected or a worker's employment having been considered or used in determining the amount of premium collected upon the policy regardless of the type of business in which an employer is engaged or the nature of the employee's work.[35]

¶ 13 Respondents' analysis of today's cause would make utterly immaterial the consideration of a worker's remuneration in setting and accepting compensation premiums.[36] The terms of the estoppel act are plainly contemplated to apply to all those situations where a worker's employment is not covered by the specific provisions of the insured's policy but whose wages were used in premi-

at ¶ 17 at 907 (where an elected official's salary was included in computing workers' compensation insurance premiums and relation between the city and the official was in the nature of employer and employee, insurer was estopped to deny the elected official was an "employee" within the terms of compensation law; *Atlas, supra* note 22, at ¶ 8 at 294 (insurer, who stepped into a fictitious partnership's shoes, was estopped to deny claimant's status as an employee where his wages were used in calculating compensation premiums); See also *Mid-Continent Casualty Co. v. Miller,* 1969 OK 2, ¶ 9, 451 P.2d 932, 934 (to assert estoppel a widow whose husband was employed by a second, uninsured company of employer must show either that an insurance premium had been paid for the husband or that the employer was liable for payment of a premium based on the deceased's wages). For those cases where employer's status as a covered entity under the Act was in question and estoppel was held applicable see *Dominic, supra* note 21, at ¶ 8 at 939; *Muscogee Nation, supra* note 21, at ¶ 8 at 501; *Wahpepah, supra* note 21, at ¶ 13 at 1154–55 and *Little, supra* note 21, at ¶ 10 at 744. For support of respondents' proposition—that jurisdictional elements must first be established before the estoppel act may be invoked—see *Rosamond, supra* note 17, at ¶ 14 at 395. See also *Mills, supra* note 17, at ¶ 9 at 851.

30. *Dominic, supra* note 21, at ¶ 9, at 938.

31. *Dominic, supra* note 21, at ¶ 8 at 938; *Wahpepah, supra* note 21, at ¶ 7 at 1153; *Little, supra* note 21, at ¶ 10 at 743.

32. *Dominic, supra* note 21, at¶ 8 at 938 (citing *Jot Davis supra* note 29, at ¶ 8 at 260–61); *Wah-* *pepah, supra* note 21, at ¶ 7 at 1153; *Muscogee Nation, supra* note 21, at ¶ 7 at 501; *Little, supra* note 21, at ¶ 10 at 743.

33. The term concretize is derived from Hans Kelsen's General Theory of Law and State, 119, 135, 397 (1945) (reprinted (1961)). "The process through which law constantly creates itself anew goes from the general and abstract to the individual and concrete. It is a process of steadily increasing individualization and concretization." (*supra* at 134–35)

34. *Dominic, supra* note 21, at ¶ 9 at 938; *Wahpepah, supra* note 21, at ¶ 8 at 1153; *Little, supra* note 21, at ¶ 11 at 743.

The second element applies even if the premium was calculated using a method that considered the scheduling of workers or the number of workers and their job duties. *Dominic, supra* note 21, ¶ 11 at 938.

35. *Dominic, supra* note 21, at ¶ 11 at 938 (citing *Young, supra* note 20, at ¶ 16 at 907 and *National Bank of Tulsa Building v. Goldsmith,* 1951 OK 5, ¶ 29, 204 Okla. 45, 226 P.2d 916, 923); *Wahpepah, supra* note 21, at ¶ 10 at 1153; *Little, supra* note 21, at ¶ 13 at 743.

36. Respondents' argument parallels that of the State Insurance Fund in *Barney U. Brown, supra,* note 29, at ¶ 5 at 186. There the court held an employee of employer's second business which, unlike the first business, was not covered by compensation insurance but whose wages were mistakenly included in setting the premium for the covered business was protected by the estoppel act.

um calculations.[37] Any other interpretation of the estoppel act would be contrary to its terms.[38] To limit the benefits of the Act only to those whose status as "employer" or "employee" or whose "employment" is beyond legal question would eliminate all need for the enactment itself and stand inapposite to *Dominic's* teachings.[39] Those who are in need of estoppel's protection are not those who may gain legal standing by meeting the Act's jurisdictional requirements.

¶ 14 The court's decision in *Rosamond*,[40] likewise, cannot be read to support respondents' assertions here. Its teachings belong to the body of pre-*Dominic* jurisprudence and are inapplicable to today's dispute.[41] Any doubts that may have existed concerning estoppel's application were silenced by *Dominic*[42] and its progeny.

¶ 15 Estoppel's reach is broad. While the text of § 65.2[43] appears to bar only an insurer's initiated challenge to the "hazardous" nature of the insured's business, the intended purpose of the quoted word in the enactment has been construed to extend the estoppel act's benefit to all disputes spawned by the insurer's denial of its insured's status as an employer covered by workers' compensation liability.[44] The provisions, likewise, have been held to estop a carrier from denying liability to an insured employer who had fewer employees than the minimum number required by the Act.[45] Estoppel's purpose is to prevent an insurer who accepts premiums from evading liability for benefits due under the law.[46] Today's controversy falls into the ambit of those with scenarios the statute was enacted to cover.

¶ 16 Shorter has met his burden. Evidence shows that insurance carrier used claimant's wages to compute the premium due. The premiums that included Shorter's salary were in fact collected, but after claimant's accident that gave rise to the injury here in suit, the insurance carrier refunded the excess premiums after a routine end-of-term policy audit.[47] **An unrequested post-accident refund does not defeat the employer's or insurer's already incurred liability.**[48] This legal maxim applies with even

37. *Barney U. Brown, supra,* note 29, at ¶ 5 at 670.

38. For the text of the estoppel act see *supra* note 1.

 Estoppel implements the policy decision of the legislature that it would be inequitable to allow a workers' compensation insurer to accept premiums and then contest coverage. *Miller v. Sears, Roebuck and Co.,* 1976 OK 67, ¶ 14, 550 P.2d 1330, 1334.

39. *See Dominic, supra* note 21, at ¶ 14 at 939, *Muscogee Nation, supra* note 21, at ¶ 7 at 501, *Wahpepah, supra* note 21, at ¶ 13 at 1154–55; *Little, supra* note 21, at ¶ 16 at 744.

40. *Rosamond, supra* note 17.

41. As the court instructed in *Young* when it distinguished *Rosamond,* the latter's holding can be understood only in light of its unique factual situation. Estoppel's bar cannot be invoked to protect an employer against liability to an employee when they are of one and the same identity. Two separate individuals—in the *nature* of employer and employee—must first exist before an estoppel can be asserted. (*Young, supra* note 20, at ¶ 12 at 906.) *Rosamond's* teachings are not otherwise instructive in the application of the estoppel act. Today's cause clearly deals with two separate entities.

42. *Dominic, supra* note 21.

43. For the text of § 65.2 see *supra* note 1.

44. *Dominic, supra* note 21, at ¶ 11 at 939 (citing *Young, supra* note 20, at ¶ 6 at 906; *Jot Davis, supra* note 29, at ¶ 8, at 260).

45. *Dominic, supra* note 21, at ¶ 11 at 939 (citing *Jot Davis, supra* note 29, at ¶ 9 at 260).

46. *Dominic, supra* note 21 at ¶ 10 at 939.

47. Respondents urge the initial premium was merely a deposit. Although a premium and a deposit may share some common characteristics, they are not synonymous for the purpose of applying the estoppel act. An insurance premium for compensation coverage is effected by payment that keeps a policy in effect. While, as here, a premium may be adjusted after its earlier payment, the adjustment does not serve retroactively to alter the quantum of risk coverage. Nor does it exonerate the liability already incurred. The risk is accepted when the premium payment is initially received and its amount is calculated on the basis of remuneration paid to claimant. That initial premium payment effects the extent of the insurer's compensation risk coverage.

48. An insurer's acceptance and retention of the premiums until after the insured's death, without investigation to determine whether grounds existed for cancellation, is estopped from denying

greater vigor to a public-policy statute that is bottomed on the principle that it would be inequitable to allow a workers' compensation insurer to accept premiums and then contest coverage.[49] An insurer who accepts a premium must likewise accept that it affords protection for all those upon whose earnings the premium is based. This protection extends from the time of premium payment through the policy's maturity, absent a pre-accident refund and notice to the insured of the disclaimed individual. If a premium is in fact overpaid and no refund is effected before the accident, the status of the worker stands fixed as that of one covered by the compensation policy. *The duty to establish proper procedures to monitor premium payments computed on the basis of an insured's personnel expenditures and guard against overpayment rests solely on the insurer.* An end-of-policy audit and accompanying refund will not protect an insurer from liability for an accident that occurs during the period the policy is in effect. In sum, Shorter's status as one who may invoke the estoppel act stands undenied.[50] This holding comports with the well-established rule that the Workers' Compensation law should be liberally construed in favor of those entitled to its benefits.[51]

 ¶ 17 There is an additional basis for today's conclusion that we raise *sua sponte.*[52] Before respondents sought to deny liability for claimant's injury, insurance carrier paid 52 weeks of temporary total disability. Its payment of temporary total disability *sans* contest of the employment-related na-

ture of Shorter's harm constitutes a waiver of the defenses available against liability.[53]

## IV.
## SUMMARY

 ¶ 18 Once the existence of a workers' compensation insurance policy is established in a worker's favor, that worker is free to invoke the jurisdiction of the Workers' Compensation Court. **A claimant who relies upon the estoppel act, 85 O.S.2001 §§ 65.2 and 65.3, must show that the claimed injury occurred when claimant was acting for the insured and premiums computed on his/her earnings were accepted under a policy insuring the insured against the liability risk under the Workers' Compensation Act.** Once this is shown, the insurance contract is conclusively presumed to be for the benefit of the injured claimant. Claimant has the burden of proving the facts necessary to raise the Act's conclusive presumption in his favor. Here, claimant has met that burden.

¶ 19 WATT, C.J., WINCHESTER, V.C.J., HARGRAVE, KAUGER, EDMONDSON and COLBERT, JJ., concur.

¶ 20 LAVENDER and TAYLOR, JJ., dissent.

liability upon the policy. *Community National Life Insurance Co. v. Graham,* 1966 OK 172, ¶ 17, 418 P.2d 670, 674. Here, the end-of-year policy audit would not have been completed until after the policy in force at the time of claimant's accident expired, 2 July 2004. NAIC had full use of the premium during the entire year the policy was in force. Freeing the insurer from the estoppel's impact would be contrary to the legislature's policy decision in enacting the estoppel act. (see *supra* note 38.)

49. *Supra* note 38.

50. We note that although the trial transcripts do not make clear if respondents stipulated to the question whether Shorter's accident arose out of

and in the course of his employment, the trial tribunal ruled that it did. This issue was not raised in respondents' appellate briefs.

51. *Barney U. Brown, supra* note 29, at ¶ 6 at 671 (citing *Rose Hill Burial Park v. Garrison,* 1936 OK 285, ¶ 2, 55 P.2d 1045, 1046, 176 Okla. 355).

52. When resolving a public-law question, we are free to choose *sua sponte* the dispositive public-law theory although the wrong one is advanced. *Amos v. Spiro Public Schools,* 2004 OK 4, ¶ 7, 85 P.3d 813, 816 (citing *Special Indemnity Fund v. Reynolds,* 1948 OK 14, ¶ 5, 188 P.2d 841, 842).

53. *Dominic, supra* note 21, at ¶ 13 at 939.