2010 OK CIV APP 21

**Sherry HAMBY, Petitioner,**

v.

**CHEROKEE NATION CASINOS, and the Workers' Compensation Court, Respondents.**

**No. 106,660.**

Court of Civil Appeals of Oklahoma, Division No. 4.

Oct. 2, 2009.

Rehearing Denied Nov. 13, 2009.

Certiorari Denied Feb. 8, 2010.

Lewis A. Berkowitz, Ballard & Berkowitz, Oklahoma City, OK, for Petitioner.

Jay L. Jones, Walls Walker Harris & Wolfe, PLLC, Oklahoma City, OK, for Respondents.

KEITH RAPP, Judge.

¶ 1 The petitioner, Sherry Hamby (Claimant), appeals an Order Dismissing her Claim

entered by the Workers' Compensation Court (WCC), which ruled that the WCC did not have jurisdiction to hear an claim filed against Cherokee Nation Casinos (Employer).[1]

## BACKGROUND

¶2 Claimant alleged that she sustained a work injury occurring as a result of her work on gambling machines in Employer's casino. The parties stipulated:[2]

1. The Cherokee Nation is a federally recognized Indian tribe.

2. Cherokee Nation Enterprises is a wholly owned entity of the Cherokee Nation.

3. The Cherokee Nation has enacted its own workers' compensation ordinances.

4. The Cherokee Nation has not expressly waived its sovereign immunity with regard to workers' compensation.

5. The United States Congress has not waived the sovereign immunity of the Cherokee Nation for workers' compensation purposes.

¶3 The trial court recited the stipulations in its Order Dismissing Claim. The court ruled that it did not have jurisdiction and dismissed the claim.

¶4 Claimant appeals and assigns a single ground for reversal, "that Congress has waived the sovereign immunity of the Chero-

kee Nation for workers' compensation." Claimant's Brief also adds the assertion that Employer enjoys no sovereign immunity because it was acting in a proprietary manner in the conduct of its gaming enterprise.

## STANDARD OF REVIEW

¶5 The issue of subject matter jurisdiction presents this Court with a question of law. *Pales v. Cherokee Nation Enterprises*, 2009 OK CIV APP 65, 216 P.3d 309; *Hall v. Cherokee Nation*, 2007 OK CIV APP 49, 162 P.3d 979. The appellate court has the plenary, independent, and nondeferential authority to reexamine a trial court's legal rulings. *Neil Acquisition, L.L.C. v. Wingrod Investment Corp.*, 1996 OK 125, 932 P.2d 1100 n. 1. Matters involving legislative intent present questions of law which are examined independently and without deference to the trial court's ruling. *Keizor v. Sand Springs Ry. Co.*, 1993 OK CIV APP 98, ¶5, 861 P.2d 326, 328.

## ANALYSIS AND REVIEW

¶6 Notwithstanding Claimant's stipulations, her argument here is that Congress waived sovereign immunity when it extended state workers' compensation laws to federal lands and Oklahoma accepted the authority. 40 U.S.C. § 290, now § 3172; 85 O.S.2001, § 4.[3] Claimant cites *Begay v. Kerr-McGee*

1. The entity is referred to in testimony as Cherokee Nation Enterprises. Tr. p. 45.

2. Tr. p. 7. The parties also presented evidence regarding the occurrence and nature of he injury and whether Employer received notice. The trial court did not rule on these issues because it dismissed the claim on jurisdictional grounds.

3. Section 3172 reads:

(a) Authorization of extension.—The state authority charged with enforcing and requiring compliance with the state workers' compensation laws and with the orders, decisions, and awards of the authority may apply the laws to all land and premises in the State which the Federal Government owns or holds by deed or act of cession, and to all projects, buildings, constructions, improvements, and property in the State and belonging to the Government, in the same way and to the same extent as if the premises were under the exclusive jurisdiction of the State in which the land, premises pro-

jects, buildings, constructions, improvement, or property are located.

(b) Limitation on relinquishing jurisdiction.— The Government under this section does not relinquish its jurisdiction for any other purpose.

(c) Nonapplication.—This section does not modify or amend subchapter I of chapter 81 of title 5.

Section 4 reads, in part:

The State of Oklahoma accepts the provisions of the Acts of Congress designated as Public Law No. 814, 49 Statutes 1938, and hereby extends the territorial jurisdiction of the Workers' Compensation Act of this state to all lands and premises owned or held by the Government of the United States of America, by deed or act of cession, by purchase or otherwise, which are within the exterior boundaries of this state, and to all purchases, buildings, constructions, improvements or property belonging to the Government of the United States of America, which are within the exterior boundaries of this state, in the same manner and to

*Corp.*, 682 F.2d 1311 (9th Cir.1982), as supporting the argument. However, *Begay* involved workers' claims against a private employer, Kerr–McGee, and, therefore, is not applicable here.

¶ 7 The cases which address the issue hold that in the absence of an unequivocal expression of congressional intent to do so, Congress did not waive Indian tribe's dependent sovereign immunity. This Court holds that Section 3172 does not operate to waive an Indian tribe's sovereign immunity. *Swatzell v. Industrial Comm'n*, 78 Ariz. 149, 277 P.2d 244 (1954); *White Mountain Apache Tribe v. Industrial Comm'n of Arizona*, 144 Ariz. 129, 696 P.2d 223 (Ariz.Ct.App.1985); *Tibbetts v. Leech Lake Reservation Business Committee*, 397 N.W.2d 883 (Minn.1986); *Middletown Rancheria of Pomo Indians v. W.C.A.B.*, 60 Cal.App.4th 1340, 71 Cal. Rptr.2d 105 (1998) (federal statute governing States' jurisdiction over civil disputes involving native American Indians was not explicit congressional waiver of tribe's sovereign immunity from state worker's compensation liability.).

¶ 8 This Court's conclusion is consistent with the general rules of statutory construction. "The fundamental rule for construction of a statute or ordinance is to ascertain and give effect to the legislative intent. That intent is to be ascertained from the text of the statute in light of its general purpose and object." *In Re: De-annexation of Certain Real Property From the City of Seminole*, 2004 OK 60, ¶ 18, 102 P.3d 120, 129.

> Legislative intent controls statutory interpretation. Intent is ascertained from the whole act in light of its general purpose and objective considering relevant provisions together to give full force and effect to each. The Court presumes that the Legislature expressed its intent and that it intended what it expressed. Statutes are interpreted to attain that purpose and end championing the broad public policy purposes underlying them. *Only where the legislative intent cannot be ascertained from the statutory language, i.e. in cases of ambiguity or conflict, are rules of statu-*

*tory construction employed.* However, where the statutory language is ambiguous or uncertain, a construction is applied to avoid absurdities does not limit itself to the consideration of a single word or phrase. Rather, we look to the various provisions of the relevant legislative scheme to ascertain and give effect to the legislative intent. Nevertheless, the plain and ordinary meaning of the language utilized is the standard for determining intent (emphasis added).

*World Publishing Co. v. Miller*, 2001 OK 49, ¶ 7, 32 P.3d 829, 832.

¶ 9 Section 3172 is clear and unambiguous. In response to the contention that Congress has effectively waived the tribal sovereign immunity by enactment of the statute, the Minnesota Supreme Court held;

> That act simply cannot be read to confer upon states jurisdiction over otherwise immune or exempt parties. Not only does that result from a plain reading of the statute, but also from the act's interpretive history as made, for example, by the Solicitor of the Department of Interior who concluded that the statute was never intended to apply to Indian tribes themselves. 1 *Opinions of the Solicitor of the Department of Interior Relating to Indian Affairs 1917–1974*, 692, 1044 (1974). The sole objective of the statute was to close a gap that prevented states from exercising workers' compensation jurisdiction over work-related injury causing accidents occurring on federal lands. For example, following enactment of the statute, an Indian injured on an Indian reservation in the course of his employment by a non-Indian employer could maintain a workers' compensation action against that employer under the state's workers' compensation law, and the employer could not raise the fact the accident occurred on federal land as a defense.

*Tibbetts*, 397 N.W.2d at 887–88.

¶ 10 Claimant next asserts that there is no immunity because the Employer acted in a proprietary capacity. This argument is con-

---

the same extent as if said premises were under the exclusive jurisdiction of the State of Okla-

homa, subject only to the limitations placed thereon by the Act of Congress.

trary to Stipulation No. 4 and therefore precluded.[4]

¶ 11 In any event the "proprietary"—"governmental" distinction appears to have no application in cases involving Indian tribes and workers' compensation cases. As a matter of federal law, before an Indian tribe is subject to suit Congress must authorize the suit or the tribe must waive its immunity. Indian tribes enjoy immunity from suits on contracts, whether those contracts involve governmental or commercial activities. *Kiowa Tribe of Oklahoma v. Manufacturing Technologies*, 523 U.S. 751, 118 S.Ct. 1700, 140 L.Ed.2d 981 (1998); *see Bittle v. Bahe*, 2008 OK 10, 192 P.3d 810.[5]

¶ 12 Therefore, the Order Dismissing Claim is sustained.

¶ 13 SUSTAINED.

GABBARD, P.J., and FISCHER, J., concur.

---

**4.** An amendment to the petition-in-error would not cure the problem because the issue was not preserved in the trial court record. Rule 1.17, Rules of Appellate Procedure in Civil Cases, 12 O.S.2001, ch. 15, app. 2, provides in pertinent part:

"... The petition in error may be amended at any time before brief in chief is filed, or there-after by leave of court, *to include any error or any issues presented to and resolved by the trial court which is supported by the record...*" (Emphasis added.)

**5.** The Court there extensively reviewed the status and history of immunity in the context of the sale of alcoholic beverages.