2012 OK 65

John A. WALTRIP, Petitioner,

v.

OSAGE MILLION DOLLAR ELM CASI-
NO and/or Osage Tribe, Hudson Insur-
ance Co. and the Workers' Compensa-
tion Court, Respondents.

No. 109,030.

Supreme Court of Oklahoma.

June 26, 2012.

Rehearing Denied Oct. 29, 2012.

Bryce A. Hill, Law Office of Bryce A. Hill, Tulsa, Oklahoma, for Petitioner.

Leah P. Keele, Brandy L. Shores, Brian J. Goree, Latham, Wagner, Steele & Lehman, P.C., Tulsa, Oklahoma, for Respondents.

COLBERT, V.C.J.

¶1 An employee of a tribal enterprise seeks to invoke the jurisdiction of the Oklahoma Workers' Compensation Court. This Court holds (1) the tribe enjoys sovereign immunity and is not therefore subject to the jurisdiction of the Oklahoma Workers' Compensation Court and (2) the workers' compensation insurer does not enjoy the tribe's immunity and is estopped to deny coverage under a policy for which it accepted premiums computed in part on the employee's earnings.

## FACTS AND PROCEDURAL HISTORY

¶2 The facts are undisputed. The Osage Million Dollar Elm Casino (Employer) is a tribal enterprise of the Osage Nation, a federally recognized Indian tribe. It carries a policy issued by Hudson Insurance Company (Insurer) for "sovereign nation workers' compensation insurance." A third party, Tribal First, administers claims asserted under the policy.

¶3 John A. Waltrip (Employee) fell on a patch of ice while working as a surveillance supervisor at the casino and injured primarily his right shoulder. Employee initially obtained treatment from his personal physician but Tribal First sent him to an orthopedic specialist who recommended surgery on August 25, 2009. The specialist confirmed that the need for shoulder surgery was due to the December 9, 2008, injury rather than an injury ten years earlier. No authorization for surgery has been provided.

¶4 Employee filed a claim in the Oklahoma Workers' Compensation Court on July 17, 2009, seeking medical treatment and temporary total disability. Employer and Insurer asserted that court lacked jurisdiction based on the tribe's sovereign immunity. A hearing was held solely on the jurisdictional issue on November 23, 2010, at which the parties presented arguments. On December 9, 2010, the Workers' Compensation Court denied jurisdiction and dismissed the claim holding that the tribe enjoys sovereign immunity and that the provisions of the tribe's workers' compensation policy did not subject Insurer to liability for claims in state court. The Court of Civil Appeals affirmed and this Court granted certiorari review.

## STANDARD OF REVIEW

¶5 This matter presents only the question of the jurisdiction of the Workers' Compensation Court over Insurer concerning Employee's claim. A jurisdictional issue is reviewed de novo and may be reviewed without a denial or award of benefits. *Triad Transport, Inc. v. Wynne,* 2012 OK 30, ¶7, 276 P.3d 1013, 1016.

## ANALYSIS

¶ 6 This is the latest in a series of cases involving an injured employee of an Indian tribe or a tribal enterprise who seeks to invoke the jurisdiction of the Oklahoma Workers' Compensation Court. Four opinions by this Court in 1997 are collectively known as the Indian sovereignty causes. *See Dominic v. Creek Nation,* 1997 OK 41, 936 P.2d 935; *Little v. Muscogee (Creek) Nation,* 1997 OK 57, 938 P.2d 739; *Wahpepah v. Kickapoo Tribe of Okla.,* 1997 OK 63, 939 P.2d 1151; *Muscogee Nation v. Smith,* 1997 OK 66, 940 P.2d 498. "In each of these cases the sovereign Indian nation purchased insurance policies from the State Insurance Fund and paid premiums based on its employees' salaries. Each policy was issued to cover claims filed in accordance with the [Workers' Compensation] Act." *Shorter v. Tulsa Used Equip. & Indus. Engine Servs.,* 2006 OK 72, ¶ 9 n. 21, 148 P.3d 864, 869 n. 21. In each case the insurer was "estopped to deny coverage based on the tribe/nation's sovereign immunity" because the 'estoppel act' became applicable when the insurer collected premiums on covered employees. *Id.*

■ ¶ 7 Sections 65.2 and 65.3 of the Workers Compensation Act, collectively known as the "estoppel act," prevent those who insure employers against liability under the Workers' Compensation Act from denying coverage based on the status of the parties. The estoppel act "makes insurers liable, regardless of the insured's status as a covered employer, when it is established that—at the time of the injury—premiums computed on a claimant's wages were accepted under a policy insuring the employer against liability under the Workers' Compensation Act." *Wahpepah,* 1997 OK 63, ¶ 13, 939 P.2d at 1154-55. Section 65.2 provides:

Every employer and every insurance carrier who schedules any employee as a person employed by the employer for the purpose of paying or collecting insurance premiums on a Workers' compensation insurance policy or who pays, receives or collects any premiums upon any insurance policy covering the liability of such employer under the Workers' compensation law by reason of or upon the basis of the employment of any such employee shall be estopped to deny that such employee was employed by the employer in a hazardous employment subject to and covered by the Workers' compensation law if such person receives an accidental personal injury arising out of and in the course of his employment, during the period for which such premium was so received, regardless of the type of business in which the employer was engaged or the type of employment in which the employee was engaged at the time of such injury.

Okla. Stat. tit. 85 (Supp. 2010). Section 65.3 provides:

Every contract of insurance issued by an insurance carrier for the purpose of insuring an employer against liability under the Workers' Compensation Act shall be conclusively presumed to be a contract for the benefit of each and every person upon whom insurance premiums are paid, collected, or whose employment is considered or used in determination of the amount of premium collected upon such policy for the payment of benefits as provided by the Workers' Compensation Act regardless of the type of business in which the employer of such person is engaged or the type of work being performed by the employee at the time of any injury received by such employee arising out of and in the course of his employment, which contract may be enforced by such employee as the beneficiary thereof.

*Id.* The essence of these provisions was carried forward into the 2011 enactment of the Workers' Compensation Code at section 357 which provides:

Every employer and insurance carrier who schedules any employee as a person employed by the employer for the purpose of paying or collecting insurance premiums on a workers' compensation insurance policy or who pays, receives or collects any premiums upon any insurance policy covering the liability of such employer under the workers' compensation law by reason of or upon the basis of the employment of any such employee shall be estopped to deny that such employee was employed by the employer.

Okla. Stat. tit. 85 (2011). As explained in the Indian sovereignty causes, "[t]he rationale of the 'estoppel act' is that an insurer who accepts premiums should not evade liability for benefits due under compensation law." *Dominic*, 1997 OK 41, ¶ 10, 936 P.2d at 939.

¶ 8 Since as early as 2007, appellate courts in Oklahoma have been confronted with the task of interpreting the provisions of "sovereign nation workers' compensation" policies issued to tribe's and their enterprises by Hudson Insurance, Inc., the insurer in this matter. Decisions from the Court of Civil Appeals that have construed the policies have upheld the tribes' sovereign immunity while refusing to apply the estoppel act to the insurer due to the provisions of the insurance contract. *See Hamby v. Cherokee Nation Casinos*, 2010 OK CIV APP 21, 231 P.3d 700; *Quinton v. Cherokee Nation Enters.*, 2010 OK CIV APP 16, 229 P.3d 581; *Pales v. Cherokee Nation Enters.*, 2009 OK CIV APP 65, 216 P.3d 309; *Hall v. Cherokee Nation*, 2007 OK CIV APP 49, 162 P.3d 979 (collectively Cherokee Nation cases). The lower courts cited that line of cases to reach the same result. This Court granted certiorari review of this matter to explain the application of the estoppel act to the claims of injured employees of a tribal enterprise under this sovereign nations workers' compensation policy.

■ ¶ 9 Insurer in this matter argues that the policy provisions demonstrate no intent to cover the claims of injured workers under Oklahoma's Workers' Compensation Code and therefore it is not subject to the estoppel act. The policy at issue describes its coverage as follows:

Sovereign Nation Workers' Compensation means the workers or workmen's compensation benefits as established by you [the tribe]. It does not include any state, federal worker or workmen's compensation law, any federal occupational disease law or the provisions of any law that provide non-occupational disability benefits.

Recognizing the tribe as a sovereign nation, with its corresponding civil jurisdiction, the actual benefits provided by this policy are subject to the tribal ordinance related to workers compensation benefits, in effect as of the effective date of this policy.

In the absence of a tribal ordinance you may or may not elect to utilize a state's workers' compensation benefit levels as a guideline for the benefits payable under this policy. However, in no event shall benefits payable exceed such state level benefits. The mere use of a state's benefit levels as a guide for payments, however, does not constitute an adoption of such state's benefit levels and shall not be construed as a waiver of your sovereign immunity.

The policy further provides that "[f]or the purposes of this policy, law shall mean, unless otherwise specifically identified, tribal ordinance or any other law to which you are subject."

¶ 10 The terms of the policy clearly contemplate the claims of injured workers will be adjudicated in tribal court pursuant to a tribe's workers' compensation ordinance. However, in the Osage Nation there is no tribal ordinance that applies to workers' compensation. Instead, in the absence of a tribal ordinance, Insured's third party administrator, Tribal First, operates under a set of "Workers' Compensation Provisions" which it has crafted to handle workers' compensation claims as the "sole and exclusive remedy by which injured workers' [sic] or their beneficiaries receive benefits provided for by these Provisions." Under the Tribal First Provisions, "[i]f an order is issued that the worker disagrees with," the worker may submit a written protest and an "appeal" may be filed with the "Tribal First Program Manager." "If it is determined that the appeal cannot be resolved, binding arbitration may be considered." [1]

1. Insurer asserts that arbitration was offered to Employee as a forum for dispute resolution but he declined. Apparently that offer was pursuant to this Tribal First provision. The contract between Insurer and the tribal enterprise mentions arbitration only "in relation to this Insurance

(including disputes as to its validity, construction or enforceability), or for its breach." As to arbitration of a claim, the Provisions leave the decision to arbitrate solely with Insurer. If arbitration were pursued, however, presumably the applicable "law" would be the Tribal First Pro-

¶ 11 By its apparently unilateral adoption of the Provisions, Tribal First appears to function as legislature, executive, trial court, and appellate court regarding the claims of injured workers while functioning as an agent of Insurer. No mention of these Provisions or Tribal First appear in the contract of insurance between Insurer and the tribal enterprise. There is nothing in the record to indicate the Tribe has approved or even considered the Tribal First Provisions. "Workers' compensation is a mechanism for providing wage benefits and medical care to injured workers and spreading the cost of these benefits through insurance." *Parret v. UNICCO Serv. Co.*, 2005 OK 54, ¶ 19, 127 P.3d 572, 578. It is the product of quid pro quo between the employer and the employee.

To facilitate workers' compensation and its objectives, an "industrial bargain" was imposed. The employee gave up the right to bring a common law negligence action against the employer and in return received automatic guaranteed medical and wage benefits. The employer gave up the common law defenses and received reduced exposure to liability.

*Id.,* ¶ 20, 127 P.3d at 578. The action of a legislative body is required to make such provisions effective, not the unilateral and discretionary acts of a workers' compensation insurer.

¶ 12 Under the Osage Nation Constitution, the Osage Nation Congress is vested with the exclusive authority to enact laws with the signature of the Principal Chief. *See* Osage Nation Const. art. VI, §§ 12 & 13. No workers' compensation ordinance has been enacted, no procedure for adjudicating claims has been developed by the Tribe, and no forum for adjudicating such claims is currently available within the tribal legal system. Insurer knew or should have known these facts at the time it issued the policy. Yet, Insurer wilfully and intentionally collects premiums from the tribal enterprise for providing workers' compensation benefits under a nonexistent tribal ordinance believing that it will step into the shoes of the Tribe and receive the benefit of the Tribe's sovereign immunity. Thus, Insurer obtains unjust enrichment from its adhesion contract with the Tribe.[2]

¶ 13 A decision in 2006 from this Court, in a non-tribal context, relied on the Indian sovereignty causes to explain the application and reach of the estoppel act. *Shorter v. Tulsa Used Equipment and Industrial Engine Services,* 2006 OK 72, 148 P.3d 864, explained that the status of an employer or employee as "covered" under the Workers' Compensation Code is not controlling. *Id.,* ¶¶ 9 & 10, 148 P.3d at 869–870. This Court further explained that the focus of the estoppel act is not on the policy terms and noted that the provisions of the estoppel act "are utterly devoid of requirements that either contractual or consensual elements of claimant's relationship to the insured be established. The focus is, rather, on the rights of an injured claimant against the insurance carrier of the entity for whom claimant was acting when injured. *These rights are purely statutory.*" *Id.,* ¶ 10, 148 P.3d at 870 (footnotes omitted)(emphasis added). "The terms of the estoppel act are plainly contemplated to apply to all those situations where a worker's employment is not covered by the

---

visions. That "law" was crafted on behalf of the "Insurer," which the Provisions define to include the claims administrator. There is no Provision that describes where a party would seek judicial confirmation of such an arbitration award.

2. An adhesion contract is:

a standardized contract prepared entirely by one party to the transaction for the acceptance of the other; such a contract, due to the disparity in bargaining power between the draftsman and the second party, must be accepted or rejected by the second party on a "take it or leave it" basis, without opportunity for bargaining and under such conditions that the "adherer" cannot obtain the desired product or service save by acquiescing in the form agreement.

*Rodgers v. Tecumseh Bank,* 1988 OK 36, ¶ 14, 756 P.2d 1223, 1226 (quoting *Steven v. Fid. & Cas. Co.,* 58 Cal.2d 862, 27 Cal.Rptr. 172, 377 P.2d 284, 297 (1963)). "Insurance contracts are generally recognized as one-sided when viewed under the circumstances at the time of contracting. Because of the disparity in the bargaining positions of the parties, these contracts of adhesion are interpreted consistent with the object sought to be accomplished...." *Bratcher v. State Farm Fire & Cas. Co.,* 1998 OK 63, ¶ 9, 961 P.2d 828, 830 (footnote omitted).

specific provisions of the insured's policy but whose wages were used in premium calculations." *Id.,* ¶ 13, 148 P.3d at 871–872.[3] Thus, the estoppel act is directed towards insurers, not insurance policies.

¶ 14 As this Court explained in the Indian sovereignty causes and further explained in *Shorter,* the estoppel act confers third party beneficiary status on the injured worker[4] and prevents the insurer from denying coverage based on the employer's status. Therefore, the sovereign immunity of the employer constitutes no barrier to its injured employees' invocation of the estoppel act absent a tribal ordinance that identifies the applicable law and forum for the adjudication of workers' compensation claims.[5]

¶ 15 If this Court were to give effect to Insurer's analysis of this matter, its obligation to provide benefits on behalf of the tribe and its injured workers would render the policy provisions illusory and inane. Insurer would possess the ability to arbitrarily deny claims and yet evade *any* judicial review in any tribal, federal, or state court. It would leave no avenue for an injured worker of the tribal enterprise to compel Insurer's performance under the policy in a judicial forum.

¶ 16 The issue in this matter is not whether Insurer is arbitrarily denying claims. Rather, the question is whether Insurer's promise to pay workers' compensation benefits is effectual in the absence of a tribal ordinance and a tribally sanctioned process for resolving disputes concerning benefits in either tribal or state court. Under such circumstances, Insurer's promise to provide benefits would become illusory and a sham but for application of the estoppel act. In-

surer's third party administrator would by default become the final arbiter of the workers' compensation claims of employees of the tribal enterprise. No detached and neutral adjudicator would be accessible to a claimant without Insurer's consent. Insurer alone would determine whether it will pay benefits without the fear of legal action in any tribal, federal, or state court. To allow this procedure to go forward would be trampling on the fundamental rights of employees to due process under the state and federal constitutions and the Osage Nation Constitution.[6]

¶ 17 The Tribe's sovereign immunity does not place Insurer beyond the reach of the estoppel act when there is no tribal ordinance or forum for the adjudication of workers' compensation claims under a policy of "sovereign nation workers' compensation." Such claims will be adjudicated in tribal court under a tribal ordinance when both law and a forum exist. Only when such law and forum are unavailable to an injured employee will the estoppel act operate to bring the Insured alone under the purview of Oklahoma's Workers' Compensation Code.

¶ 18 It is the absence of a tribal workers' compensation ordinance and the lack of a tribal forum that distinguishes this matter from Cherokee Nation cases in which the Court of Civil Appeals refused to apply the estoppel act to claims asserted under a "sovereign nations workers' compensation" policy. The Cherokee Nation has a tribal workers' compensation ordinance by which it adjudicates workers' compensation claims in its tribal court. If Insurer wishes to be certain that the claims of tribal enterprise employees will not be adjudicated in the Oklahoma Workers' Compensation Court

---

3. The premiums in this policy were based on remuneration which included "payroll and all other remuneration paid or payable during the policy period for the services of: 1. all your officers and employees engaged in work covered by this policy...."

4. Additionally, "[a] contract made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it." Okla. Stat. tit. 15, § 29 (2011).

5. The insurance contract in this matter acknowledges the estoppel act and the employees' status

as third party beneficiaries by providing: "We are directly and primarily liable to any person entitled to the benefits payable by this insurance. Those persons may enforce our duties; so may an agency authorized by law. Enforcement may be against us or against you and us."

6. "The Osage Nation government in exercising sovereign powers shall not: ... deny to any person within its jurisdiction the equal protection of its laws or deprive any person of liberty or property without due process of law." Osage Nation Const. art. IV, § 3(H).

pursuant to the Workers' Compensation Code, it should require that a tribe enact a tribal ordinance and provide a forum for the adjudication of workers' compensation claims before it contracts to insure those claims pursuant to tribal ordinance.

¶ 19 Today's decision in no way holds or implies that the Osage Nation is not immune from the jurisdiction of the Oklahoma Workers' Compensation Court. The Indian sovereignty causes resolved that issue long ago. Additionally, tribal sovereign immunity for the actions of tribal enterprises has been acknowledged widely.[7] That acknowledgment is not diminished by today's holding which is directed only at Insurer's promise to provide workers' compensation benefits to employees of the tribal enterprise. The Osage Nation is entirely within its authority should it choose to enact a workers' compensation ordinance and provide a tribal forum. In the absence of such ordinance or forum, however, Insurer is not entitled to evade liability. Regardless of the tribes' sovereign immunity, the Oklahoma Workers' Compensation Court may exercise jurisdiction over Insurer, which is a Delaware corporation, and its third party administrator.

¶ 20 This claim, brought in the Workers' Compensation Court pursuant to the estoppel act, should have been asserted against Insurer and not the tribal enterprise. On remand, that court is instructed to reinstate the claim against Insurer only.

---

7. One general description of tribal immunity states:

As a matter of black-letter law, "Indian tribes are immune from lawsuit or court process in both state and federal court unless 'Congress has authorized the suit or the tribe has waived its immunity.'" Felix S. Cohen, *Cohen's Handbook of Federal Indian Law*, 635 (Nell Jessup Newton et al. eds., LexisNexis Matthew Bender rev. ed. 2005) [hereinafter *Cohen 2005 Handbook*] (quoting *Kiowa Tribe v. Mfg. Technologies, Inc.*, 523 U.S. 751, 754, 118 S.Ct. 1700, 140 L.Ed.2d 981 (1998)); *See also Three Affiliated Tribes of the Fort Berthold Reservation v. Wold Eng'g, P.C.*, 476 U.S. 877, 890–891, 106 S.Ct. 2305, 90 L.Ed.2d 881 (1986); *Puyallup Tribe v. Dep't of Game*, 433 U.S. 165, 172–173, 97 S.Ct. 2616, 53 L.Ed.2d 667 (1977). A tribe's sovereign immunity extends to its commercial as well as governmental activities. *Kiowa Tribe*, 523 U.S. at 759, 118 S.Ct. 1700. "Tribal sovereign immunity protects

---

CERTIORARI PREVIOUSLY GRANTED; OPINION OF COURT OF CIVIL APPEALS VACATED; ORDER OF WORKERS' COMPENSATION COURT REVERSED AND REMANDED WITH INSTRUCTIONS.

ALL JUSTICES CONCUR.

a tribal corporation owned by a tribe and created under its own laws, absent express waiver of immunity by the tribe or Congressional abrogation." *Wright v. Colville Tribal Ent. Corp.*, 159 Wash.2d 108, 147 P.3d 1275, 1278 (2006)(citing *Kiowa Tribe*, 523 U.S. at 754, 118 S.Ct. 1700). State judicial jurisdiction over Indian tribes and tribal members in Indian country is generally precluded in the absence of express authorization by treaty or by Congress. *Cohen 2005 Handbook* at 521. "Indian country includes 'all lands set aside by whatever means for the residence of tribal Indians under federal protection, together with trust and restricted Indian allotments.'" *Id.* at 520 (quoting *Okla. Tax Comm'n v. Sac & Fox Nation*, 508 U.S. 114, 125, 113 S.Ct. 1985, 124 L.Ed.2d 30 (1993)). *Cossey v. Cherokee Nation Enters.*, 2009 OK 6, ¶ 2, 212 P.3d 447, 466–467 (Colbert, J. concurring specially).