TASSO v. LUCKY STAR CASINO

Skip to Main Content
Accessibility Statement

Help
Contact Us

e-payments
Careers

Home
Courts
Decisions
Programs
News
Legal Research
Court Records
Quick Links

OSCN Found Document:TASSO v. LUCKY STAR CASINO

Previous Case

Top Of Index

This Point in Index

Citationize

Next Case

Print Only

TASSO v. LUCKY STAR CASINO2022 OK CIV APP 15Case Number: 119576Decided: 04/22/2022Mandate Issued: 05/18/2022DIVISION IITHE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II
Cite as: 2022 OK CIV APP 15, __ P.3d __

ROBERT TASSO, Petitioner,
v.
LUCKY STAR CASINO and THE WORKERS' COMPENSATION COMMISSION, Respondents.

PROCEEDING TO REVIEW AN ORDER OF THE
WORKERS' COMPENSATION COMMISSION

AFFIRMED

Kent Eldridge, Guinise Marshall Eldridge, KENT ELDRIDGE P.C., Oklahoma City, Oklahoma, for Petitioner

John A.L. Campbell, Roger M. Gassett, ASTON, MATHIS, CAMPBELL, PLLC, Tulsa, Oklahoma, and
Merrill C. Godfrey, AKIN GUMP STRAUSS HAUER & FELD LLP, Washington, D.C., for Respondents

JANE P. WISEMAN, PRESIDING JUDGE

¶1 Robert Richard Tasso (Claimant) seeks review of an order of the Workers' Compensation Commission affirming a decision of an administrative law judge to dismiss his claim for lack of jurisdiction by the Commission. Claimant seeks review for the Commission's error in finding that it had no jurisdiction over the Employer, Lucky Star Casino, and its insurer, AMERIND Risk Management Corporation. This appeal raises issues of whether they are entitled to sovereign immunity and whether denial of substitution of the third-party administrator, Berkley Risk Administrator Company, LLC, for Employer or Insurer was proper. After review, we conclude the Commission did not err and affirm its decision.

FACTS AND PROCEDURAL BACKGROUND

¶2 Claimant injured his left knee on June 10, 2019, while employed by Lucky Star Casino. He filed a CC-Form-3 on July 10, 2019, alleging he sustained a left leg injury when he "[b]acked into bathroom stall causing the left knee to twist." In response, Employer filed a motion to dismiss asserting the WCC had no jurisdiction over Employer because Employer is owned by the Cheyenne and Arapaho Tribes and enjoys sovereign immunity, as does its insurer AMERIND. Employer also asserted that Oklahoma's workers' compensation laws do not apply to Claimant's injury.

¶3 Claimant filed a response in opposition to Employer's motion to dismiss asserting, "AMERIND states that its Tribal Workers' Compensation program is administered by the third-party administrator, Berkley Risk, which is publicly traded and a member company of W.R. Berkley Corporation, [an] A+ Fortune 500 holding company." (Citation to the record omitted.). Claimant asserted that, although he does not take issue with the assertion that the Cheyenne and Arapaho Tribes are entitled to sovereign immunity, he should be able to proceed with his claim against the third-party administrator.

¶4 Employer responded that it has sovereign immunity and its insurer, AMERIND, is a tribal enterprise also entitled to sovereign immunity. Employer noted that the third-party administrator, Berkley Risk, is not a party to this case, is not an insurance company, and has never undertaken an obligation to pay workers' compensation benefits. Employer also asserted that the Estoppel Act, discussed below, does not apply to Berkley Risk.

¶5 Claimant then filed a CC-Form-13 to add AMERIND and Berkley Risk as additional parties. Berkley filed a motion to dismiss asserting the WCC lacks personal jurisdiction over it because it does not have the required minimum contacts with Oklahoma. Berkley contended that Claimant does not have a legally cognizable claim against it because it is not his employer, is not an insurer, and did not accept any premiums for workers' compensation insurance. Berkley asserted the Estoppel Act does not apply because it is a third-party administrator.

¶6 After several responses and replies, and a hearing held on the motions to dismiss, the ALJ found that the essential facts are not in dispute. On or about June 10, 2019, Claimant injured his left knee "while he was acting in the course and scope of his employment" with Lucky Star Casino, a wholly owned enterprise of the Cheyenne and Arapaho Tribes. The Tribes previously insured against workers' compensation claims through an insurance policy it purchased from the Hudson Insurance Company, which has its principle place of business in New York but is incorporated in Delaware. In December 2018, the Tribes passed a resolution, authorizing the Tribes' governor to purchase a workers' compensation insurance policy from AMERIND to become effective January 1, 2019. The Resolution provides in pertinent part:

WHEREAS: The Tribes have reviewed proposals from the current insurance carrier and from Amerind Risk (represented by the broker Arthur J. Gallagher & Co.) and have determined that the Tribes will be best served by Amerind Risk; and

NOW, THEREFORE BE IT RESOLVED the Seventh Legislature of the Cheyenne and Arapaho Tribes hereby affirms that the policy shall be reviewed and renewed on an annual basis.

BE IT FURTHER RESOLVED the Seventh Legislature of the Cheyenne and Arapaho Tribes hereby authorizes Governor Reggie Wassana to sign the 2019 Commercial Property, Commercial General Liability, and Workers' Compensation polices with Amerind Risk and their broker Arthur J. Gallagher & Co.

¶7 The ALJ found, "AMERIND is a federally chartered corporation formed by three federally recognized tribes under Section 17 of the Indian Reorganization Act of 1934 (25 USC §477)." The Tribes pay AMERIND an insurance premium based on a schedule of employees and their salaries. The ALJ further found:

The Tribes do not have their own workers' compensation ordinance. The AMERIND policy includes the AMERIND Risk Tribal Workers Compensation Benefit Endorsement ("the Endorsement"). According to the Endorsement, "the benefits in this Endorsement will prevail in the absence of a Tribal Workers' Compensation Ordinance. The benefits in this Endorsement are the maximum benefits payable under the Tribal Workers' Compensation Ordinance." The Endorsement continues, "[t]his Endorsement replaces any and all rights and remedies an Employee or an Employee's Dependents may have against you for any injury under applicable federal, state, or tribal law." The Respondents contend the Tribes legislatively "adopted" the Endorsement as their own workers' compensation ordinance with the passage of the Resolution. However, there is nothing in the language of the Resolution to indicate any intention to perform a law-making function or to adopt the Endorsement as the Tribes' law. There is nothing in the language of the Resolution to indicate the Tribes accepted and/or approved the Endorsement as any type of binding tribal authority. Even if the Commission accepted the Respondents' argument, the Endorsement clearly states that it replaces any and all rights and remedies an employee may have against the Tribes for any injury under applicable federal, state or tribal law.

(Citations to the record omitted.)

¶8 The ALJ also found, "The Tribes do not have their own forum to adjudicate workers' compensation claims." Pursuant to the Endorsement, AMERIND "selects and appoints Hearing Examiners to resolve disputes arising under the application of the Endorsement" and establishes the Hearing Examiners' rates of pay and terms of office. The Endorsement also provides that a Hearing Examiner's decision is final and cannot be appealed.

¶9 The ALJ found that Berkley Risk is not a tribal entity but a third-party claims administrator for AMERIND who provides claims administration pursuant to the Endorsement. The ALJ concluded that Lucky Star Casino is a tribal enterprise entitled to sovereign immunity requiring the claim against it to be dismissed. The ALJ further found that AMERIND is a tribal enterprise and "a federally chartered corporation formed by the Red Lake Band of Chippewa Indians, the Confederated Salish and Kootenai Tribes of Flathead Reservation, and the Pueblo Santa Ana tribes pursuant to Section 17 of the Indian Reorganization Act of 1934. 25 U.S.C. §5124 (formerly 25 U.S.C. §477)."

¶10 Claimant asserted "that because AMERIND collects premiums from the Tribes to provide its insurance coverage," it "cannot deny claimant is an employee subject to Oklahoma workers' compensation law" pursuant to 85A Supp. 2014 § 117. This is referred to as the Estoppel Act which states:

Every employer and insurance carrier who schedules any employee as a person employed by the employer for the purpose of paying or collecting insurance premiums on a workers' compensation insurance policy or who pays, receives or collects any premiums upon any insurance policy covering the liability of such employer under the workers' compensation law by reason of or upon the basis of the employment of any such employee shall be estopped to deny that such employee was employed by the employer.

¶11 Claimant also asserts Waltrip v. Osage Million Dollar Elm Casino, 2012 OK 65, 290 P.3d 741, is controlling. The ALJ noted that in Waltrip, the Supreme Court held, "Regardless of tribal sovereign immunity, Oklahoma courts could exercise jurisdiction over the insurance carrier and its third party administrator, neither of which were tribal enterprises." The ALJ concluded:

While the Waltrip decision is authoritative on several levels, it is distinguishable from the instant case. Whereas the insurance carrier in Waltrip was an insurance company created by the laws of the State of Delaware with is principal place of business in New York, AMERIND is a federally chartered corporation formed by three federally recognized Indian tribes under Section 17 of the Indian Reorganization Act of 1934 (25 USC §477). Because it is a tribal enterprise, AMERIND is also entitled to sovereign immunity, and must be dismissed.

¶12 The ALJ concluded:

With regard to the third party administrator, which is not a tribal entity, Berkley Risk alleges it does not have sufficient contacts, or minimum contacts, with the State of Oklahoma to support general jurisdiction, because it has not purposefully availed itself of the privilege of doing business in Oklahoma to establish personal jurisdiction. However, from February 1990 through December 2007, Berkley Risk maintained an active Oklahoma third party administrator license. As such, Berkley Risk has minimum contacts with the state of Oklahoma.

¶13 Although the Administrative Workers' Compensation Act (AWCA) does not specifically define "third party administrator," the ALJ concluded "it is clear that there is a distinction between 'insurance carrier' and 'third party administrator', at least insofar as the AWCA separates them for purposes of collecting fees. 85A O.S. §29(A) and [(C)]." Berkley Risk was not Claimant's employer and does not provide workers' compensation insurance coverage. The Endorsement names Berkley Risk as the AMERIND appointed claims administrator "charged with administering the claim benefits in accordance with the Endorsement." Berkley Risk issued Claimant temporary total disability checks. The ALJ concluded, "Berkley Risk can be considered a claims' adjuster, authorizing or denying benefits according to the terms of the Endorsement." Berkley Risk's only involvement arises from its contractual relationship with AMERIND. The ALJ stated:

Nevertheless, the Waltrip Court specifically stated, "[r]egardless of the tribes' sovereign immunity, the Oklahoma Workers' Compensation Court may exercise jurisdiction over Insurer, which is a Delaware corporation, and its third party administrator." Waltrip at §19, emphasis added. Berkley Risk argues the emphasized language is dicta only, or a statement of general truth or principal, and the Commission agrees.

The ALJ acknowledged that the WCC might at some point need to exert its authority over a third-party administrator, for example, when a third-party administrator refuses to comply with the WCC's order. The WCC may exercise jurisdiction in that event. The ALJ stated, "However, nothing in the Waltrip decision gives the Commission the authority to substitute the third party administrator for the employer or the insurance carrier and no other authority has been presented by claimant in support of his request." The ALJ reasoned, "While the specific statutory language of the AWCA states the 'employer may also mean the employer's workers' compensation insurance carrier, if applicable,' there is no language in the AWCA which indicates the third party administrator is interchangeable with the employer or insurance carrier." The ALJ concluded Claimant does not have a legally cognizable claim against Berkley Risk and dismissed Claimant's action with prejudice.

¶14 Claimant filed a request for review and an amended request for review with the WCC. The WCC affirmed the ALJ's decision, and Claimant now seeks review of that decision.

STANDARD OF REVIEW

¶15 This Court will only reverse the Commission's decision if it is:

1. In violation of constitutional provisions;

2. In excess of the statutory authority or jurisdiction of the Commission;

3. Made on unlawful procedure;

4. Affected by other error of law;

5. Clearly erroneous in view of the reliable, material, probative and substantial competent evidence;

6. Arbitrary or capricious;

7. Procured by fraud; or

8. Missing findings of fact on issues essential to the decision.

85A O.S. Supp. 2019 § 78(C). Whether the Commission had jurisdiction is a question of law and we will review its decision on this issue de novo. See Pales v. Cherokee Nation Enters., 2009 OK CIV APP 65, ¶ 4, 216 P.3d 309. "Under that standard on appeal, this Court assumes plenary, independent, and non-deferential authority to reexamine the lower tribunal's legal rulings." Brown v. Claims Mgmt. Res. Inc., 2017 OK 13, ¶ 10, 391 P.3d 111.

ANALYSIS

¶16 Claimant raises a number of issues in his brief in chief relating to the WCC's jurisdiction. We will address each of these five issues in turn.

I. Claimant failed to show Tribes were prohibited by federal law from obtaining workers' compensation coverage from AMERIND.

¶17 Claimant first asserts Tribes are prohibited by 25 U.S.C.A. § 5118 from associating with another tribe. Claimant acknowledges that "AMERIND is a tribal enterprise" and "[i]t is a federally chartered corporation formed by the Red Lake Band of Chippewa Indians, the Confederated Salish and the Kootenai tribes of the Flathead Reservation and the Pueblo of Santa Ana tribes pursuant to Section 17 of the Indian Reorganization Act of 1934."

¶18 Title 25 U.S.C.A. § 5118 provides:

The provisions of this Act shall not apply to any of the Territories, colonies, or insular possessions of the United States, except that sections 9, 10, 11, 12, and 16 shall apply to the Territory of Alaska: Provided, That sections 4, 7, 16, 17, and 18 of this Act shall not apply to the following-named Indian tribes, the members of such Indian tribes, together with members of other tribes affiliated with such named tribes located in the State of Oklahoma, as follows: Cheyenne, Arapaho, Apache, Comanche, Kiowa, Caddo, Delaware, Wichita, Osage, Kaw, Otoe, Tonkawa, Pawnee, Ponca, Shawnee, Ottawa, Quapaw, Seneca, Wyandotte, Iowa, Sac and Fox, Kickapoo, Pottawatomi, Cherokee, Chickasaw, Choctaw, Creek, and Seminole. Section 4 of this Act shall not apply to the Indians of the Klamath Reservation in Oregon.

25 U.S.C.A. § 5118 (emphasis added). The Act to which § 5118 refers is the Indian Reorganization Act, June 18, 1934 (IRA). Section 13 of the IRA is now codified at 25 U.S.C.A. § 5118. Section 17 of the Act is now codified at 25 U.S.C.A. § 5124, which states:

The Secretary of the Interior may, upon petition by any tribe, issue a charter of incorporation to such tribe: Provided, That such charter shall not become operative until ratified by the governing body of such tribe. Such charter may convey to the incorporated tribe the power to purchase, take by gift, or bequest, or otherwise, own, hold, manage, operate, and dispose of property of every description, real and personal, including the power to purchase restricted Indian lands and to issue in exchange therefor interests in corporate property, and such further powers as may be incidental to the conduct of corporate business, not inconsistent with law; but no authority shall be granted to sell, mortgage, or lease for a period exceeding twenty-five years any trust or restricted lands included in the limits of the reservation. Any charter so issued shall not be revoked or surrendered except by Act of Congress.

25 U.S.C.A. § 5124. Tribes can form tribal businesses through a federal charter pursuant to Section 17. Federal courts have recognized that tribal businesses incorporated pursuant to Section 17 maintain their sovereign immunity. See Amerind Risk Mgmt. Corp. v. Malaterre, 633 F.3d 680, 685 (8th Cir. 2011).

¶19 "As a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity." Kiowa Tribe of Oklahoma v. Manufacturing Techs., Inc., 523 U.S. 751, 754, 118 S. Ct. 1700, 1702, 140 L. Ed. 2d 981 (1998). A waiver of a tribe's sovereign immunity must be expressed unequivocally. Santa Clara Pueblo v. Martinez, 436 U.S. 49, 58, 98 S. Ct. 1670, 1677, 56 L. Ed. 2d 106 (1978). An implied waiver of sovereign immunity will not be recognized. Id.

¶20 Claimant, however, argues the following on this question. Tribes, and thus Employer, are excluded from the protections of Section 17 because they are specifically excluded from the IRA by 25 U.S.C.A. § 5118. As a result, "Tribes were prohibited from engaging AMERIND to provide workers' compensation coverage" and "Tribes are excluded by name and by State from participating in the enterprises under which AMERIND is incorporated (25 U.S.C. Section 5124), by U.S.C. Section 5118." According to Claimant, "Tribes cannot escape the prohibition of 25 U.S.C. Section 5118 by association with another tribe." Although AMERIND is a tribal enterprise formed by three tribes, Tribes are not allowed to "engage the incorporating tribes directly, or indirectly by [] extension [of] AMERIND, to provide workers compensation insurance coverage . . . ."

¶21 Employer counters as follows. Claimant's argument on this issue is inapposite because it is protected by similar provisions of the Oklahoma Indian Welfare Act, 25 U.S.C.A. §§ 5201-5210 (OIWA). Section 5203 of the Act applies:

Any recognized tribe or band of Indians residing in Oklahoma shall have the right to organize for its common welfare and to adopt a constitution and bylaws, under such rules and regulations as the Secretary of the Interior may prescribe. The Secretary of the Interior may issue to any such organized group a charter of incorporation, which shall become operative when ratified by a majority vote of the adult members of the organization voting: Provided, however, That such election shall be void unless the total vote cast be at least 30 per centum of those entitled to vote. Such charter may convey to the incorporated group, in addition to any powers which may properly be vested in a body corporate under the laws of the State of Oklahoma, the right to participate in the revolving credit fund and to enjoy any other rights or privileges secured to an organized Indian tribe under the Act of June 18, 1934 (48 Stat. 984): Provided, That the corporate funds of any such chartered group may be deposited in any national bank within the State of Oklahoma or otherwise invested, utilized, or disbursed in accordance with the terms of the corporate charter.

25 U.S.C.A. § 5203. Congress expanded the IRA by enacting the OIWA "to include Indian tribes in Oklahoma." Memphis Biofuels, LLC v. Chickasaw Nation Indus., Inc., 585 F.3d 917, 918 (6th Cir. 2009). "Section 17 of the IRA . . . allows for a tribe to incorporate; thus, tribes incorporated under the IRA or OIWA are called Section 17 corporations." Id. The OIWA, at § 5203, specifically provides that tribes subject to the OIWA "enjoy any other rights or privileges secured to an organized Indian tribe under the Act of June 18, 1934." 25 U.S.C.A § 5203.

¶22 Employer further argues that the Oklahoma Supreme Court has recognized the parallel function of the cited provisions of the OIWA and IRA:

Title 25 U.S.C. [§] 503 [now 25 U.S.C. § 5203] permits any recognized tribe in Oklahoma to obtain a corporate charter issued by the Secretary of the Interior. Under Section 503 the corporate charter may grant to the corporation any powers properly vested in a corporate body according to laws of the state. Id. Congress[]['] purpose in enacting this statute and its similar counterpart, 25 U.S.C. [§] 477 [now 25 U.S.C § 5124], which permits tribes from other states to organize as corporations, was to promote organization by tribes for economic purposes. Muscogee (Creek) Nation v. Hodel, 851 F.2d 1439, 1442 (D.C. Cir. 1988); see generally Cohen, Handbook of Federal Indian Law 147-149 (1982).

State ex rel. Oklahoma Tax Comm'n v. Thlopthlocca Tribal Town of Oklahoma, 1992 OK 127, ¶ 8, 839 P.2d 180.

¶23 After considering the parties' arguments on this question, we agree with Employer that Claimant has failed to show that either 25 U.S.C.A. § 5118 or § 5124 prohibits Tribes from engaging AMERIND to provide workers' compensation coverage. If Claimant is asserting that Tribes were not permitted to incorporate and form Lucky Star Casino, he has failed to do so. Although he points to the IRA's Section 17 prohibition applying to the Tribes, he has not addressed or distinguished the OIWA. And, as Employer argues, Claimant has not explained, if he in fact established this prohibition, why it would make Employer or Insurer any less immune from this suit than they actually are.

II. The WCC properly concluded Claimant cannot proceed on his workers' compensation claim against the third-party administrator.

¶24 Claimant next asserts that he may proceed on his workers' compensation claim against Berkley as Employer's third-party administrator. Claimant notes that Berkley, as the claims administrator, issues checks to him and administers prescriptions to him. Claimant's sole legal support for this argument is one sentence in Waltrip v. Osage Million Dollar Elm Casino, 2012 OK 65, ¶ 19, 290 P.3d 741, which states, "Regardless of the tribes' sovereign immunity, the Oklahoma Workers' Compensation Court may exercise jurisdiction over Insurer, which is a Delaware corporation, and its third party administrator." We conclude that this sentence alone, contrary to Claimant's assertion, does not resolve the issue before us.

¶25 In Waltrip, the claimant was a tribal enterprise employee who sought to invoke the Workers' Compensation Court's jurisdiction. Id. ¶ 1. The claimant was employed by the Osage Million Dollar Elm Casino, an Osage Nation tribal enterprise. Id. ¶¶ 2-3. Casino "carrie[d] a policy issued by Hudson Insurance Company (Insurer) for 'sovereign nation workers' compensation insurance.' A third party, Tribal First, administers claims asserted under the policy." Id. ¶ 2. After the claimant fell on ice while working for Casino, he filed a claim in Oklahoma's Workers' Compensation Court. Id. ¶¶ 3-4. The Workers' Compensation Court dismissed his claim, concluding it did not have jurisdiction. Id. ¶ 4.

¶26 The Supreme Court reversed the WCC's decision. Id. ¶ 20. The Court noted that the "estoppel act" prevents:

those who insure employers against liability under the Workers' Compensation Act from denying coverage based on the status of the parties. The estoppel act "makes insurers liable, regardless of the insured's status as a covered employer, when it is established that--at the time of the injury--premiums computed on a claimant's wages were accepted under a policy insuring the employer against liability under the Workers' Compensation Act."

Id. ¶ 7 (quoted citation omitted).1 In Dominic v. Creek Nation, State Ins. Fund, 1997 OK 41, ¶ 10, 936 P.2d 935, another case involving questions of jurisdiction and sovereign immunity, the Supreme Court held, "The rationale of the 'estoppel act' is that an insurer who accepts premiums should not evade liability for benefits due under compensation law." In Waltrip, the insurer argued, the policy provisions in question "demonstrate[d] no intent to cover the claims of injured workers under Oklahoma's Workers' Compensation Code and therefore it is not subject to the estoppel act." Waltrip, 2012 OK 65, ¶ 9. The policy stated it recognized "the tribe as a sovereign nation, with its corresponding civil jurisdiction" and provided that "the actual benefits provided by this policy are subject to the tribal ordinance related to workers compensation benefits, in effect as of the effective date of this policy." Id. The policy prescribed:

In the absence of a tribal ordinance you may or may not elect to utilize a state's workers' compensation benefit levels as a guideline for the benefits payable under this policy. However, in no event shall benefits payable exceed such state level benefits. The mere use of a state's benefit levels as a guide for payments, however, does not constitute an adoption of such states benefit levels and shall not be construed as a waiver of your sovereign immunity.

Id. The Court noted that although "[t]he terms of the policy clearly contemplate the claims of injured workers will be adjudicated in tribal court pursuant to a tribe's workers' compensation ordinance," there is no Osage Nation tribal ordinance governing workers' compensation claims. Id. ¶ 10. Instead, the third-party administrator operated "under a set of 'Workers' Compensation Provisions'" that were the "'sole and exclusive remedy by which injured workers'[sic] or their beneficiaries receive benefits provided for by these Provisions.'" Id.

¶27 The Court explained:

By its apparently unilateral adoption of the Provisions, Tribal First2 appears to function as legislature, executive, trial court, and appellate court regarding the claims of injured workers while functioning as an agent of Insurer. No mention of these Provisions or Tribal First appear in the contract of insurance between Insurer and the tribal enterprise. There is nothing in the record to indicate the Tribe has approved or even considered the Tribal First Provisions.

Id. ¶ 11. The Osage Nation's lack of tribal workers' compensation ordinances and the lack of a tribal forum to adjudicate workers' compensation claims were deciding factors in the Court's decision to apply the Estoppel Act. The Court said, "If Insurer wishes to be certain that the claims of tribal enterprise employees will not be adjudicated in the Oklahoma Workers' Compensation Court pursuant to the Workers' Compensation Code, it should require that a tribe enact a tribal ordinance and provide a forum for the adjudication of workers' compensation claims before it contracts to insure those claims pursuant to tribal ordinance." Id. ¶ 18. The Court explained:

Today's decision in no way holds or implies that the Osage Nation is not immune from the jurisdiction of the Oklahoma Workers' Compensation Court. The Indian sovereignty causes resolved that issue long ago. Additionally, tribal sovereign immunity for the actions of tribal enterprises has been acknowledged widely. That acknowledgment is not diminished by today's holding which is directed only at Insurer's promise to provide workers' compensation benefits to employees of the tribal enterprise. The Osage Nation is entirely within its authority should it choose to enact a workers' compensation ordinance and provide a tribal forum. In the absence of such ordinance or forum, however, Insurer is not entitled to evade liability. Regardless of the tribes' sovereign immunity, the Oklahoma Workers' Compensation Court may exercise jurisdiction over Insurer, which is a Delaware corporation, and its third party administrator.

Id. ¶ 19 (footnote omitted). The Supreme Court concluded that the claimant's claim "should have been asserted against Insurer and not the tribal enterprise." Id. ¶ 20. The Court remanded the case to the Workers' Compensation Court and directed it to reinstate the claimant's claim against the insurer only. Id.

¶28 Although the Waltrip Court allowed the claimant's action to proceed against the insurer, that insurer was not, as is the case here, a tribal entity entitled to sovereign immunity. There was no such instruction to allow the claimant to proceed against the third-party administrator. The Waltrip Court specifically instructed the lower tribunal to allow the claim to proceed solely against the insurer. Id. ¶ 20.

¶29 We decline to conclude that Claimant can proceed against Berkley based solely on one line in Waltrip that states, "Regardless of the tribes' sovereign immunity, the Oklahoma Workers' Compensation Court may exercise jurisdiction over Insurer, which is a Delaware corporation, and its third party administrator." In Waltrip, the insurer was not, as here, a tribal enterprise. Claimant agrees, as stated in his brief, that AMERIND is a tribal enterprise and a federally chartered corporation formed by three tribes. Claimant has not shown that, as a federally chartered corporation, AMERIND is somehow prohibited from providing insurance policies to other federally chartered corporations. Although we recognize that some of the issues may mirror those in Waltrip, such as the lack of a tribal workers' compensation system, we cannot ignore, as discussed below, that AMERIND is entitled to sovereign immunity.

¶30 We agree with the WCC that AMERIND, as a federally chartered corporation, or a Section 17 corporation, is also entitled to sovereign immunity. In Amerind Risk Management Corp. v. Malaterre, 633 F.3d 680, 682 (8th Cir. 2011), the United States Court of Appeals for the Eighth Circuit held that AMERIND Risk Management Corporation was immune from suit in Turtle Mountain Band of Chippewa Indians Tribal Court when the plaintiffs were three enrolled members of the Turtle Mountain Band of Chippewa Indians Tribe. The Court of Appeals held "that the Tribal Court does not have jurisdiction over the plaintiffs' direct suit against Amerind because Amerind is entitled to tribal immunity and the plaintiffs have failed to meet their burden of showing that Amerind waived such immunity." Id. at 682. AMERIND provided the Turtle Mountain Housing Authority with coverage for property damage and personal injury. Id. A fire destroyed a house leased from the Housing Authority, a fire which killed two people and injured a third. Id. The plaintiffs brought suit in Tribal Court against the Housing Authority and AMERIND. Id. In deciding the question of whether AMERIND is entitled to sovereign immunity, the Court of Appeals stated:

To determine whether Amerind is immune from the plaintiffs' suit in Tribal Court, we must first determine whether Amerind is entitled to sovereign immunity. While Amerind is not itself a tribe, "[i]t is ... undisputed that a tribe's sovereign immunity may extend to tribal agencies." [Hagen v. Sisseton-Wahpton Cmty. Coll., 205 F.3d 1040, 1043 (8th Cir. 2000)]. As discussed above, Amerind was incorporated by three Charter Tribes and issued a federal charter under 25 U.S.C. § 477.3 Several courts have recently recognized that § 477 corporations are entitled to tribal sovereign immunity. See Memphis Biofuels, LLC v. Chickasaw Nation Indus., Inc., 585 F.3d 917, 920--21 (6th Cir.2009); Bales v. Chickasaw Nation Indus., 606 F.Supp.2d 1299, 1304 (D.N.M.2009); Sanchez v. Santa Ana Golf Club, Inc., 136 N.M. 682, 104 P.3d 548, 551 (2004). As the Sixth Circuit emphasized in Memphis Biofuels, "the language of [§ 477] itself--by calling the entity an 'incorporated tribe'--suggests that the entity is an arm of the tribe." 585 F.3d at 921.

We also note that Amerind is not an ordinary insurance company. Indeed, Amerind's purpose is to administer a self-insurance risk pool for Indian Housing Authorities and Indian tribes. See Self--Insurance Plans Under the Indian Housing Block Grant Program, 71 Fed. Reg. 11464, 11464 (proposed Mar. 7, 2006) "AMERIND continues to administer the approved self-insurance plan for properties funded under NAHASDA, pursuant to 24 CFR 1000.138."). Because Amerind is a § 477 corporation that administers a tribal self-insurance risk pool, we hold that Amerind "serves as an arm of the [Charter Tribes] and not as a mere business and is thus entitled to tribal sovereign immunity." Hagen, 205 F.3d at 1043.

Id. at 685.

¶31 Although the Waltrip Court allowed the claimant to proceed against the insurer based on the Estoppel Act, we conclude that option is foreclosed here given AMERIND's sovereign immunity.

¶32 The WCC concluded:

While the Waltrip decision is authoritative on several levels, it is distinguishable from the instant case. Whereas the insurance carrier in Waltrip was an insurance company created by the laws of the State of Delaware with its principal place of business in New York, AMERIND is a federally chartered corporation formed by three federally recognized Indian tribes under Section 17 of the Indian Reorganization Act of 1934 (25 USC §477). Because it is a tribal enterprise, AMERIND is also entitled to sovereign immunity, and must be dismissed.

We concur with the WCC's conclusion.

¶33 That leads us to whether Claimant may proceed against Berkley in the absence of any jurisdiction over Employer or Insurer. The ALJ noted that it agreed with Berkley's assertion that the following language in Waltrip is dictum: "Regardless of the tribes' sovereign immunity, the Oklahoma Workers' Compensation Court may exercise jurisdiction over Insurer, which is a Delaware corporation, and its third party administrator." Waltrip, 2012 OK 65, ¶ 19, 290 P.3d 741 (emphasis added). The ALJ acknowledged that the WCC might at some point need to exert its authority over a third-party administrator, perhaps, for instance, when a third-party administrator refuses to comply with the WCC's order. The ALJ concluded, "However, nothing in the Waltrip decision gives the Commission the authority to substitute the third party administrator for the employer or the insurance carrier and no other authority has been presented by claimant in support of his request." According to the ALJ, "While the specific statutory language of the AWCA states the 'employer may also mean the employer's workers' compensation insurance carrier, if applicable,' there is no language in the AWCA which indicates the third party administrator is interchangeable with the employer or insurance carrier." For these reasons, the ALJ determined Claimant does not have a legally cognizable claim against Berkley Risk. We agree with the ALJ's conclusion.

¶34 The ALJ cited 85A O.S. Supp. 2020 § 35(A)(1), which provides, "Every employer shall secure compensation as provided under this act to its employees for compensable injuries without regard to fault." Subsection 35(B) states, "The primary obligation to pay compensation is on the employer, and the procurement of a policy of insurance by an employer to cover the obligation in respect to this act shall not relieve the employer of the obligation." The AWCA defines employer as:

a natural person, partnership, association, limited liability company, corporation, and the legal representatives of a deceased employer, or the receiver or trustee of a person, partnership, association, corporation, or limited liability company, departments, instrumentalities and institutions of this state and divisions thereof, counties and divisions thereof, public trusts, boards of education and incorporated cities or towns and divisions thereof, employing a person included within the term "employee" as defined in this section. Employer may also mean the employer's workers' compensation insurance carrier, if applicable. Except as provided otherwise, this act applies to all public and private entities and institutions . . . .

85A O.S. Supp. 2020 § 2(12). Carrier is defined by the AWCA as "any stock company, mutual company, or reciprocal or interinsurance exchange authorized to write or carry on the business of workers' compensation insurance in this state. Whenever required by the context, the term 'carrier' shall be deemed to include duly qualified self-insureds or self-insured groups." 85A O.S. Supp. 2020 § 2(2). As a third-party administrator, Berkley is not an employer nor is it a carrier.

¶35 Claimant has not provided any legal authority to hold a third-party administrator directly responsible for the duties AWCA places on employers and insurance carriers. In short, Claimant has cited no authority to support his claim that he can proceed directly on his workers' compensation claim against Berkley alone as merely the administrator.

III. The WCC's jurisdiction in the traditional sense over Berkley is not determinative of the issue before this Court.

¶36 Claimant next asserts that the WCC has jurisdiction over Berkley. We reiterate that the question is not whether WCC has jurisdiction over Berkley, but whether Claimant may assert his claim directly against Berkley when he may not against Tribe or AMERIND. We agree with the ALJ that this issue is distinct from whether Claimant may mount his claim against an entity that is neither an employer nor an insurance carrier. We conclude in this instance that he may not. Any other issues regarding the WCC's jurisdiction over Berkley are irrelevant.

IV. The terms of AMERIND's policy are not before this Court because it does not have jurisdiction over AMERIND.

¶37 Claimant asserts that because the AMERIND policy allows claims to be arbitrarily denied and the Tribes have no workers' compensation ordinance, there is no neutral, detached adjudicator to decide his claim. Claimant correctly counsels that the lack of such a detached, neutral arbitrator was pivotal in Waltrip. This case, however, differs from Waltrip because this insurance carrier is entitled to sovereign immunity. Both Employer and Insurer--Tribes and AMERIND--are entitled to sovereign immunity, and it follows as a matter of law that this Court is thus precluded from reaching the underlying issues.

V. Claimant has not shown that 25 U.S.C.A. § 5124 prohibits AMERIND from providing workers' compensation coverage.

¶38 Claimant asserts that 25 U.S.C.A. § 5124 only allows AMERIND to be incorporated for the purpose of conveyance of land and cannot provide workers' compensation insurance to Tribes. We decline to read § 5124 in such a restrictive manner, especially in light of the discussion in Section II of this Opinion regarding AMERIND and the opinion in Amerind Risk Management Corp. v. Malaterre, 633 F.3d 680 (8th Cir. 2011) discussing the background for its incorporation.

CONCLUSION

¶39 Based on our analysis, we uphold the WCC's decision to affirm the ALJ's dismissal of Claimant's suit for lack of jurisdiction over Employer and Insurer based on sovereign immunity and to reject Claimant's attempt to pursue liability against the third-party administrator.

¶40 AFFIRMED.

RAPP, J., concurs, and BLACKWELL, J., concurs specially.

BLACKWELL, J., concurring specially:

I concur in full with the Court's opinion but write separately to emphasize that whether the Cheyenne and Arapahoe Tribes were initially (or subsequently) permitted under Section 17 of the IRA to form a federally-chartered corporation is tangential to the critical question of whether Amerind, as a federally-charted corporation under that same act, is entitled to sovereign immunity. The Court correctly concludes that Amerind is entitled to sovereign immunity and that the privilege has not been waived for purposes of this suit. This immunity alone is fatal to the petitioner's first, fourth, and fifth propositions of error.

FOOTNOTES

1 Title 85A O.S. Supp. 2020 § 117, the Administrative Workers' Compensation Act's estoppel provision, states:

Every employer and insurance carrier who schedules any employee as a person employed by the employer for the purpose of paying or collecting insurance premiums on a workers' compensation insurance policy or who pays, receives or collects any premiums upon any insurance policy covering the liability of such employer under the workers' compensation law by reason of or upon the basis of the employment of any such employee shall be estopped to deny that such employee was employed by the employer.

2 Tribal First was the third-party administrator of claims asserted under the policy in question in Waltrip.

3 As noted above, 25 U.S.C.A. § 477 is now 25 U.S.C.A. § 5124.

Citationizer© Summary of Documents Citing This Document

Cite
Name
Level

None Found.

Citationizer: Table of Authority

Cite
Name
Level

Oklahoma Court of Civil Appeals Cases
 CiteNameLevel

 2009 OK CIV APP 65, 216 P.3d 309, PALES v. CHEROKEE NATION ENTERPRISESDiscussed
Oklahoma Supreme Court Cases
 CiteNameLevel

 1992 OK 127, 839 P.2d 180, 63 OBJ 2579, State ex rel. Oklahoma Tax Com'n v. Thlopthlocco Tribal Town of OklahomaDiscussed
 1997 OK 41, 936 P.2d 935, 68 OBJ 1279, Dominic v. Creek NationDiscussed
 2012 OK 65, 290 P.3d 741, WALTRIP v. OSAGE MILLION DOLLAR ELM CASINODiscussed at Length
 2017 OK 13, 391 P.3d 111, BROWN v. CLAIMS MANAGEMENT RESOURCES INC.Discussed
Title 85A. Workers' Compensation
 CiteNameLevel

 85A O.S. 2, DefinitionsDiscussed
 85A O.S. 29, Fees - Compensation Insurance Carrier - Self-Insurer - Third-Party AdministratorCited
 85A O.S. 35, Employer - Duty to Compensate - Limitation - Primary ObligationCited
 85A O.S. 78, Workers' Compensation Commission - Appeal to Commission - Appeal to Supreme CourtCited
 85A O.S. 117, Denial of Employment Estopped - Scheduled EmployeeCited

oscn

EMAIL: webmaster@oscn.net
Oklahoma Judicial Center
2100 N Lincoln Blvd.
Oklahoma City, OK 73105

courts

Supreme Court of Oklahoma
Court of Criminal Appeals
Court of Civil Appeals
District Courts

decisions

New Decisions
Supreme Court of Oklahoma
Court of Criminal Appeals
Court of Civil Appeals

programs

The Sovereignty Symposium

Alternative Dispute Resolution
Early Settlement Mediation
Children's Court Improvement Program (CIP)
Judicial Nominating Commission
Certified Courtroom Interpreters
Certified Shorthand Reporters
Accessibility ADA

Contact Us
Careers
Accessibility ADA